**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ZERITA L. ROSS, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Action No. RDB-24-2414 |
| ERIE INSURANCE EXCHANGE, | * | |
| *Defendant*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

This federal racial discrimination and related state tort action arises from a business relationship between Plaintiffs Zerita L. Ross ("Individual Plaintiff" or "Ross") and Ross Insurance Agency, Inc. ("Corporate Plaintiff" or "Ross Insurance") (collectively, "Plaintiffs") and several insurance companies. (ECF No. 1 at 1.) Ross is an African American woman who has worked as an insurance producer in Maryland since 1998 and owns Ross Insurance. (*Id.* ¶¶ 5, 11.) Plaintiffs allege that between 1998 and 2020, they experienced racial discrimination from various insurance companies with whom they contracted as insurance producers. (*Id.* ¶ 12.) Accordingly, on August 20, 2024, Plaintiffs initiated the instant action by filing a three-count Complaint in this Court against Defendants Erie Insurance Exchange; Erie Insurance Company; Erie Insurance Property & Casualty Company; Erie Family Life Insurance Company (collectively, "Entity Defendants"), and Kristopher C. Marrion ("Individual Defendant" or "Marrion") (collectively with Entity Defendants, "Defendants").[1]

---

[1] Plaintiffs' Complaint also contains substantive allegations against Flagship City Insurance Company ("Flagship"), but Plaintiffs did not include Flagship as a defendant in the caption of the Complaint and have

(ECF No. 1.)  In their Complaint, Plaintiffs allege against all Defendants race discrimination in violation of 42 U.S.C. § 1981 (Count I); intentional interference with economic relations (Count II); and respondeat superior (Count III).[2]

Currently pending before this Court are two Motions: (1) Plaintiffs' Motion to Stay Proceedings (ECF No. 3) ("Plaintiffs' Motion"), and (2) Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 14) ("Defendants' Motion").  Defendants have responded in Opposition to Plaintiffs' Motion (ECF No. 15), and Plaintiffs have replied (ECF No. 19).  Similarly, Plaintiffs have responded in Opposition to Defendants' Motion (ECF No. 18), and Defendants have replied (ECF No. 24).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons explained below, Defendants' Motion to Dismiss (ECF No. 14) is GRANTED and Plaintiffs' Motion to Stay (ECF No. 3) is MOOT.  Specifically, Defendant's Motion is GRANTED as to all Counts, and Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint as to the § 1981 claim in Count I.[3]

---

not attempted to serve summons or process upon Flagship in the months since they filed their Complaint. Even so, Flagship is on notice of this action and has joined in Defendants' filings but expressly reserves defenses related to Plaintiffs failure to properly serve it. *See, e.g.*, (ECF No. 14-1 at 1 n.2.)

[2] This Court has federal question jurisdiction over Count I under 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the state tort claims in Counts II and III pursuant to 28 U.S.C. § 1367.  Plaintiffs do not allege diversity jurisdiction, as Plaintiffs and Individual Defendant Marrion are citizens of Maryland.  (ECF No. 1 ¶¶ 3, 4, 10.)

[3] As further explained below, the Maryland Insurance Administration ("MIA") has primary jurisdiction over the state tort claims alleged in Counts II and III.  Where a state agency has primary jurisdiction, a Court may either stay a case or dismiss the case without prejudice, but it cannot hear those claims until the agency proceedings have concluded.  *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 431 (4th Cir. 2015) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993)).  Accordingly, although Counts II and III are dismissed without prejudice, any amendments to those claims would be futile.

# BACKGROUND

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiffs' Complaint (ECF No. 1) and accepted as true for the purpose of Defendants' Motion to Dismiss (ECF No. 14) to the extent it moves for dismissal under Rule 12(b)(6).

Plaintiff Zerita L. Holly-Ross ("Ross") is an African American woman who owns Plaintiff Ross Insurance Agency ("Ross Insurance"), an insurance company incorporated in Maryland.  (ECF No. 1 ¶¶ 3, 4.)  This action arises from her allegations that several insurance companies—Erie Insurance Exchange, Erie Insurance Company, Erie Insurance Property & Casualty Company, Erie Family Life Insurance Company, Flagship City Insurance Company—and an individual employee of Erie Insurance, Kristopher C. Marrion ("Marrion"), discriminated against her and Ross Insurance on the basis of her race.  (*Id.* ¶¶ 5–10.)  Plaintiffs allege that Ross began working as an insurance producer for Defendants in 1998 and became the first African American insurance producer for Erie Insurance Defendants in Maryland.[4]  (*Id.* ¶ 11; ECF No. 14-1 at 2.)  At some point between 1998 and

---

[4]  Plaintiffs refer to Defendants collectively throughout their Complaint, and do not distinguish among the individual named insurance company Defendants, Flagship City Insurance Company, or the individual named Defendant Marrion.  *See* (ECF No. 1).  For consistency, the Court adopts Plaintiffs' collective reference to "Defendants" but notes that it is not clear on the face of the Complaint for which companies Ross worked; the relationship between the insurance companies; or which named insurance company employed Marrion.  Plaintiffs explain that Marrion works for Erie Insurance, which includes part of the name of multiple Entity Defendants but is not the identified name of any Entity Defendant.  Although the Court adopts Plaintiffs' reference to all Defendants collectively, the Court makes no determination about (1) which Defendants

2020, Ross sold Erie insurance in Maryland pursuant to a Ross Agency Agreement and/or Erie Agency Agreement ("Agency Agreement").[5]  (ECF No. 14-1 at 2; ECF No. 1 ¶ 17.)

Plaintiffs allege that, by 2020, Ross had developed a book of business worth nearly $4 million based on services she provided to more than 2,600 insureds.  (ECF No. 1 ¶ 12.) According to Plaintiffs, despite this success, Defendants treated them differently because of Ross's race.  (*Id.*)  Plaintiffs allege that, in April 2002, Defendants began interfering with their ability to enter contracts with prospective insureds in the greater Baltimore area.  (*Id.* ¶ 13.) Specifically, Plaintiffs allege that Defendants rerouted to Ross leads with names that sounded African American or Hispanic and diverted from Ross leads with names that sounded European American.  (*Id.* ¶ 14.)  Plaintiffs also allege that between 2003 and 2021, Defendants reduced their commissions without legitimate reason.  (*Id.* ¶ 15.)  According to Plaintiffs, Defendants also required Plaintiffs to meet additional requirements, such as background checks and site visits, which other agents who were not African American did not have to meet.  (*Id.* ¶ 16.)

In May 2020, Erie terminated its Agency Agreement with Plaintiffs by a Termination Letter.  (ECF No. 14-1 at 2.)  After Plaintiffs received this letter, they allegedly reported their grievances to the Maryland Insurance Administration ("MIA"), which allegedly determined that the termination of the Agency Agreement occurred due to Erie's use of unlawful loss

---

Plaintiffs mean to refer to in various paragraphs of the Complaint, or (2) the relationships between various Defendants.

[5]  Plaintiffs and Defendants refer to their agreement or agreements by different titles.  For clarity, the Court refers to the parties' agreement, including multiple agreements if more than one agreement existed, collectively as "Agency Agreement."  The Complaint does not explain the purpose of the agreement, its parties, or when it was entered. The Complaint also does not allege any facts as to when the Ross Agency Agreement was terminated.

ratio metrics that targeted agencies in urban areas with large minority populations.  (*Id.* at 2; ECF No. 1 ¶ 17.)  In November 2022, while Plaintiffs' MIA complaint remained pending, Plaintiffs filed a lawsuit against Defendants in this Court (Civil No. JRR-22-2868) ("*Ross I*").[6] (ECF No. 14-1 at 3.)  In *Ross I*, Plaintiffs alleged racial discrimination in violation of 42 U.S.C. § 1981; intentional interference with economic relations; and respondeat superior as to the Erie Entity Defendants.  (ECF No. 1, Civ. No. JRR-22-2868, ¶¶ 43–90.)  *Ross I* was dismissed without prejudice on March 8, 2023, based on Plaintiffs' failure to exhaust their administrative remedies before the MIA.  (ECF No. 41, Civ. No. JRR-22-2868, at 77–88.)

On August 20, 2024, Plaintiffs initiated the instant action by filing a three-Count Complaint in this Court, once again alleging against Defendants race discrimination in violation of 42 U.S.C. § 1981 (Count I); intentional interference with economic relations (Count II); and respondeat superior (Count III).  (ECF No. 1.)  The same day, Plaintiffs filed a Motion to Stay (ECF No. 3) ("Plaintiffs' Motion") pending resolution of the related administrative proceeding before the MIA.  (ECF No. 3 at 2.)  On September 23, 2024, Defendants filed a Motion to Dismiss (ECF No. 14) ("Defendants' Motion") and a response in Opposition (ECF No. 15) to Plaintiffs' Motion.  Plaintiffs responded in Opposition (ECF No. 18) to Defendants' Motion and filed a reply (ECF No. 19) to Defendants' opposition to

---

[6] Although these facts are not alleged in Plaintiffs' Complaint, this Court includes them as relevant procedural background.  A motion to dismiss under Rule 12(b)(6) is ordinarily limited to the pleadings, and a Court must convert such a motion to a motion for summary judgment if it wishes to consider matters outside the pleadings. *See* FED. R. CIV. P. 12(d).  A court may, however, "take judicial notice of its own records," including judicial filings related to *Ross I*, without converting a motion under Rule 12(b)(6) to a motion for summary judgment. *Mitchell v. Henderson*, 128 F. Supp. 2d 298, 301 (D. Md. 2001) (citation omitted).  Accordingly, in this case, the Court considers the filings related to *Ross I* without converting Defendants' Motion to a motion for summary judgment.

Plaintiffs' Motion. Defendants subsequently replied (ECF No. 24) to Plaintiffs' opposition to their Motion to Dismiss. This matter is now ripe for review.

## STANDARDS OF REVIEW

### I.    Motion to Dismiss Pursuant to 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In determining whether jurisdiction exists, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

### II.    Motion to Dismiss Pursuant to 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which

relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

The Court addresses Defendants' Motion to Dismiss (ECF No. 14) before reaching Plaintiffs' Motion to Stay (ECF No. 3) because Defendants in their opposition to staying the case "incorporate and adopt the argument set forth . . . as if set forth in full" the arguments in their Motion to Dismiss. (ECF No. 15 at 3, 4.)  Moreover, where a Court determines that

dismissal is appropriate, such dismissal moots any pending motion to stay. *See, e.g., Zhang v. United States FDA*, Civ. No. GLR-22-3126, 2024 WL 516967, at *1, *5 (D. Md. Jan. 18, 2024).

## I.    Motion to Dismiss

Defendants raise six arguments in their Motion to Dismiss (ECF Nos. 14; 14-1.)  First, Defendants argue that Plaintiffs' claims are time-barred by the applicable statutes of limitations.  Second, Defendants argue that the Court lacks subject-matter jurisdiction over this case because Plaintiffs failed to exhaust their administrative remedies.  Third, Defendants contend that this Court should apply *Younger*[7] abstention and decline to hear this action.  Fourth, Defendants assert that the Court should apply *Burford*[8] abstention doctrine to decline to hear this action.  Fifth, Defendants argue that Plaintiffs' Complaint should be dismissed for failure to state a claim.  Finally, Defendants contend that Flagship City Insurance Company should be dismissed for lack of jurisdiction because it has not been served with process.  The Court first addresses Defendants' jurisdictional arguments before reaching their arguments for dismissal under Rule 12(b)(6).

### A.  Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

As an initial matter, the Court addresses the procedural path under which Defendants purport to file their Motion to Dismiss.  Defendants style their Motion in part as a

---

[7]  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court recognized a doctrine of abstention by which federal courts could decline to exercise their jurisdiction pending the outcome of an ongoing state criminal proceeding.  *Younger* abstention has since been extended to apply to state civil enforcement proceedings akin to criminal proceedings.  *See Sprint. Comms., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (explaining expansion of *Younger* abstention).

[8]  In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court recognized a doctrine of abstention by which federal courts may decline to exercise their jurisdiction pending the outcome of administrative proceedings where the relevant agency is "charged with principal responsibility for face finding and for policy making . . . ." *Id.* at 326.

jurisdictional challenge to this Court's subject matter jurisdiction based on Plaintiffs alleged failure to exhaust their administrative remedies before the Maryland Insurance Administration ("MIA"). (ECF No. 14-1 at 10–11.) The substantive argument in Defendants' Motion, however, refer to the "presumption of administrative primacy." (*Id.* at 11.) In their opposition, Plaintiffs appear to construe Defendants' jurisdictional argument as an argument related to an administrative exhaustion requirement contained in 42 U.S.C. § 1981. (ECF No. 18 at 7.) Thus, before addressing Defendants' Motion, the Court clarifies the distinction between a challenge to subject matter jurisdiction for failure to meet a statutory exhaustion requirement and a challenge based on administrative primacy under the primary jurisdiction doctrine.

When properly and timely invoked by a defendant, administrative exhaustion raises a threshold jurisdictional issue as to a court's subject matter jurisdiction to hear a given case. *See Miranda v. Garland*, 34 F.4th 338, 350–51 (4th Cir. 2022) ("Congress may codify the doctrine [of exhaustion of administrative remedies] as a jurisdictional bar, and '[w]here Congress specifically mandates, exhaustion is required.'" (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Notably, the U.S. Court of Appeals for the Fourth Circuit has recognized that the language of the statute at issue determines whether an administrative exhaustion requirement is jurisdictional. *See United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (explaining administrative exhaustion not jurisdictional where statute only required it under one of two possible paths to judicial appeal).

Distinct from such jurisdictional administrative exhaustion, "[t]he doctrine of primary jurisdiction 'is designed to coordinate administrative and judicial decision-making by taking

advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion.'" *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 431 (4th Cir. 2015) (quoting *Env't Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir.1996)).  Unlike jurisdictional administrative exhaustion, the doctrine of primary jurisdiction "does not deprive the court of jurisdiction; [the court] has discretion to either retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Id.* (quoting *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993)). Under the doctrine of primary jurisdiction therefore, a court must decline to exercise jurisdiction and allow an administrative ruling before hearing the case.  *Id.*  For this reason, this Court has recognized that primary jurisdiction does not involve subject matter jurisdiction and "may be waived if not timely and properly asserted." *CSX Transp., Inc. v. Transp.-Commc'ns Int'l Union*, 413 F. Supp. 2d 553, 564–65 (D. Md. 2006).

Defendants' Motion to Dismiss under Rule 12(b)(1) appears to raise a primary jurisdiction argument for dismissal.  Plaintiffs' response addresses Defendants' argument only to the extent that it raises an administrative exhaustion requirement and only as to Plaintiffs' § 1981 claim in Count I.  *See* (ECF No. 15 at 7–9 (explaining § 1981 does not have an administrative exhaustion requirement and noting administrative remedies would be futile or inadequate).  Given Plaintiffs' opposition and Defendants' framing of their jurisdictional challenge as a challenge rooted in subject matter jurisdiction, the Court construes Defendants' Motion to raise both jurisdictional administrative exhaustion and primary jurisdiction.

### i. There is no Administrative Exhaustion Requirement

Defendants argue that each of Plaintiffs' claims is subject to an administrative exhaustion requirement. (ECF No. 14-1 at 10–12.)  In opposition, Plaintiffs state that they have diligently pursued administrative remedies before the MIA, and there is no administrative exhaustion requirement for claims under 42 U.S.C. § 1981. (ECF No. 18 at 7–8.)  The Court evaluates each claim in turn.

### a. 42 U.S.C. § 1981

This Court has previously held that there is no requirement that a plaintiff exhaust federal administrative remedies before bringing a claim under 42 U.S.C. § 1981.  *See Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 882 (D. Md. 2012) ("[W]hile Title VII requires plaintiffs to exhaust administrative remedies, § 1981 claimants face no such obstacles.").  In *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 334 (4th Cir. 1983), the U.S. Court of Appeals for the Fourth Circuit explained that "promotions claims brought under 42 U.S.C. § 1981, exhaustion of EEOC remedies is not a prerequisite to filing suit . . . ."  That is, plaintiffs raising claims under § 1981 were not required to exhaust *federal* administrative remedies.  *Id.*; *see also Buntin v. City of Boston*, 813 F.3d 401, 405 (1st Cir. 2015) (collecting cases holding that Section 1981 does not have an administrative exhaustion requirement).  Defendants assert, however, that Plaintiffs have failed to exhaust their *state* administrative remedies—specifically their proceedings before the Maryland Insurance Administration ("MIA")—such that their claims before this federal Court should be jurisdictionally barred.  (ECF No. 14-1 at 11.)

It appears that neither the Supreme Court nor the Fourth Circuit have specifically addressed whether a plaintiff must exhaust state administrative remedies before raising a claim

under § 1981. *See Johnson v. Rwy. Express Agency*, 421 U.S. 454, 456 n.3 (1975) (declining "to express a view as to whether a § 1981 claim of employment discrimination is every subject to a requirement that administrative remedies be exhausted").[9]   The Supreme Court has, however, recognized that 42 U.S.C. § 1983 does *not* require exhaustion of state administrative remedies. *See Patsy v. Bd. of Regents of State of Florida*, 457 U.S. 496, 500 (1982) ("Beginning with *McNeese v. Board of Education*, 373 U.S. 668, 971–673 (1963), we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies.").   Relying on the Supreme Court's consistent rejection of any requirement that plaintiffs exhaust state administrative remedies before filing an action under § 1983, several courts have held that plaintiffs need not exhaust state administrative remedies before filing an action under § 1981. *See, e.g., Desikins v. Barry*, 729 F. Supp. 1, 3 (D.D.C. 1989) ("The Supreme Court has stated that the exhaustion of state administrative remedies is not a prerequisite to the bringing of a civil rights action."); *Gilliam v. City of Omaha*, 459 F.2d 63, 63 (8th Cir. 1972) (holding as to suggestion that § 1981 plaintiff must exhaust Nebraska state administrative remedies, "[i]t is now well settled that the exhaustion of remedies requirement does not apply to claims for relief under the Civil Rights Act"); *Watson v. Fraternal Ord. of Eagles*, 915 F.2d 235, 241–43 (6th Cir. 1990) (explaining that, unlike actions under Title II, an action under § 1981 may be filed without seeking federal or state administrative relief); *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir. 1979) (deeming "legally frivolous" the argument that plaintiff failed to exhaust state remedies because she "was

---

[9] The § 1981 claim that Plaintiffs raise here is not an employment discrimination claim because neither Plaintiff was an employee of Defendants during the relevant period.

not required to exhaust her judicial or administrative remedies before she brought her civil rights action"). At least one district court in the Fourth Circuit has followed suit. *See CBOCS West, Inc. v. Humphries*; *Webb v. Kroger Co.*, 620 F. Supp. 1489, 1491 (S.D.W. Va. 1985).

Although Defendants contend that the asserted exhaustion requirement should be considered in the context of the MIA or state insurance regulatory scheme, *see* (ECF No. 24 at 8), they largely cite to cases evaluating an exhaustion requirement relative to *state* claims, not claims brought under 42 U.S.C. § 1981. The weight of authority and the determinations of other district courts in the Fourth Circuit counsel against imposing a requirement that claims under § 1981 are subject to exhaustion of state administrative remedies. For this reason, to the extent that Defendants' challenge raises a jurisdictional administrative exhaustion requirement distinct from the doctrine of primary jurisdiction, this Court has jurisdiction over Plaintiffs' § 1981 claim in Count I.

### b.    State Law Claims in Counts II and III

Similarly, neither respondeat superior nor intentional interference with economic relations have administrative exhaustion requirements distinct from the primary jurisdiction doctrine. As an initial matter, the parties appear to dispute under which state law Plaintiffs bring Counts II and III. Defendants assert that the parties' Agency Agreement subjected their disputes, including this action, to the law of Pennsylvania. (ECF No. 14-1 at 29.) Plaintiffs do not address this contention and do not clarify whether they bring their state law claims under Pennsylvania or Maryland law. This dispute is not particularly relevant to Count III, which alleges respondeat superior, because neither Maryland nor Pennsylvania appear to recognize an independent cause of action for respondeat superior. *See Olschefski v. Red Lion*

*Area Sch. Dist.*, 2012 WL 6003620, at *6 (M.D. Pa. Nov. 30, 2012) ("In Pennsylvania, there is no separate cause of action for respondeat superior liability."); *Seiberlich v. Deossa*, Civ. No. TDC-23-0560, 2024 WL 343298, at *5 (D. Md. Jan. 30, 2024) ("Judges in this District have held that respondeat superior is not a separate cause of action under Maryland law."). Because respondeat superior is not an independent cause of action, it cannot have a jurisdictional administrative exhaustion requirement under the law of either state.

Intentional interference with economic relations—brought under Pennsylvania or Maryland law—also lacks any jurisdictional administrative exhaustion requirement. Plaintiffs do not identify any statute under which they raise their Count II. Under Maryland law, intentional interference with economic relations is a common law tort. *See ScanSource, Inc. v. Thurston Grp., LLC*, Civ. No. DKC-11-0380, 2011 WL 1884775, at *5 (D. Md. May 18, 2011); *see also Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc*, 650 A.2d 260, 268–69, 271 (Md. 1994). Under Pennsylvania law, the closest analogous tort is tortious interference with economic relations or intentional interference with business advantage. *See GlassHouse Systs., Inc. v. Int'l Bus. Machs. Corp.*, 607 F. Supp. 2d 709, 717, 717 n.10 (E.D. Pa. 2009) (explaining elements of tort and noting its various names). As a common law tort, there is no statute that defines the scope of this claim in Pennsylvania. As explained above, the Fourth Circuit has made clear that a legislative body must impose an administrative exhaustion requirement before such a requirement becomes a jurisdictional bar. *See Garland*, 34 F.4th at 350–51. Accordingly, to the extent Defendants raise administrative exhaustion separate from the primary jurisdiction doctrine, there is no jurisdictional administrative exhaustion requirement as to Plaintiffs' common law tort claims in this case.

14

ii.    **Doctrine of Primary Jurisdiction**

The substance of Defendants' argument regarding jurisdiction in this case arises under the doctrine of primary jurisdiction.  Specifically, Defendants assert that the Maryland General Assembly intended the Maryland Insurance Administration ("MIA") to have primary jurisdiction over Plaintiffs' claims.  (ECF No. 14-1 at 11.)  Plaintiffs appear to wholly misunderstand Defendants' argument regarding primary jurisdiction and respond to the argument only as to the jurisdictional administrative exhaustion requirements discussed above. *See* (ECF No. 18 at 7–9.)  At most, Plaintiffs' response in opposition to Defendants' Motion addresses only one of the four steps of the primary jurisdiction analysis, as discussed further below.

Plaintiffs' claims before the MIA related to their assertion that Defendants imposed "unlawful loss ratio metrics" to target "agencies in urban areas with large minority populations" and mistreated Plaintiffs as insurance producers or agents.[10]  (ECF No. 1 ¶ 17.) According to Defendants, Plaintiffs raised these allegations before the MIA under §§ 19-107, 27-501, and 27-503 of the Maryland Insurance Article.  (ECF No. 14-1 at 11.)  Section 27-503 of the Maryland Insurance Article "prohibits an insurer from terminating or amending an agency agreement due to 'adverse loss ratio.'"  (ECF No. 18-1 at 2.)  An adverse loss ratio is one measure that may be used to evaluate an insurer's profitability.  (*Id.*) "[A]n insurer's loss

_____

[10]  Neither Plaintiffs nor Defendants define in detail a "loss ratio metric."  Plaintiffs attach as an exhibit to their Response (ECF No. 18-1) to Defendant's Motion a letter from the MIA regarding the MIA action.  It is not clear to this Court whether that exhibit relates to the MIA proceeding underlying this action or to a separate MIA proceeding.  Plaintiffs provide no explanation for this exhibit and do not reference it in their Reply. Similarly, Plaintiffs do not attach the MIA complaint(s) to their Complaint before this Court and reference only a general MIA proceeding in the Complaint.  (ECF No. 1 ¶ 17.)  Because the primary jurisdiction argument depends on the allegations raised in the MIA proceeding, the Court takes its understanding of a "loss ratio metric" from that letter.

ratio is largely a function of its own business decisions," particularly the risks that it is willing to underwrite and "how much it charges to write those risks." (*Id.*)  Under Section 27-501(a) of the Maryland Insurance Article, an insurer may not base its underwriting eligibility guidelines—which set the risks it is willing to underwrite—on "race, color, creed, sex, or blindness." (*Id.*)  Additionally, the underwriting eligibility guidelines must not be "arbitrary, capricious or unfairly discriminatory," and they "must be reasonably related to the insurer's business and economic purposes." (*Id.*)  Finally, under Section 19-107 of Maryland's Insurance Article, subject to the exception provided in the statute, "[a]n insurer may not refuse to issue or renew a contract . . . solely because the subject of the risk or the applicant's or insured's address is located in a certain geographic area of the State[.]"  MD. CODE ANN., INS. § 19-107(a).

As explained above, the doctrine of primary jurisdiction enables a court to decline to exercise its jurisdiction pending resolution of administrative proceedings where an action involves "issues of fact not within the conventional experience of judges" or requires "administrative discretion.'"  *Smith*, 769 F.3d at 431 (4th Cir. 2015) (quoting *Env't Tech. Council*, 98 F.3d at 789).  If the court determines that factual issues are best left to an administrative agency pursuant to the doctrine of primary jurisdiction, "it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."  *Reiter*, 507 U.S. at 268–69.  As both the Fourth Circuit and the Supreme Court have recognized, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction."  *Environmental Tech. Council*, 98 F.3d at 789 (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).  The Fourth Circuit has previously evaluated primary jurisdiction in the context

of federal statutes and agencies by evaluating the statutory framework and claims at issue to determine whether the merits of a claim would require the court to decide an issue that the statutory framework assigns to a specific agency. *See Smith*, 796 F.3d at 431.[11]  *Id.* at 431–32; *see also Env't Tech. Council*, 98 F.3d at 789 (addressing primary jurisdiction as relevant to factual issues).

When evaluating the possible primary jurisdiction of the Maryland Insurance Administration ("MIA"), however, the Fourth Circuit has applied Maryland law.  *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 442 F. App'x 2, 5 (4th Cir. 2011); *Arthur v. Ticor Title Ins. Co.*, 569 F.3d 154 (4th Cir. 2009).  Under Maryland law, courts presume that "'when the statutory text creating an administrative remedy is not dispositive' as to whether exhaustion is mandatory, 'the administrative remedy is intended to be primary, and that claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy.'"  *Mitchell-Tracey*, 442 F. App'x at 5 (quoting *Arthur*, 569 F.3d at 161).  Effectively, the MIA has primary jurisdiction when claims depend on Maryland statutory law.  *Id.* at 7.  A claim is "dependent on the Insurance Code" if "that claim will succeed only if plaintiffs show that [the insurer] violated the Code."  *Id.* (quoting *Arthur*, 569 F.3d at 161).

---

[11]  For the reasons explained below, the Court reaches the primary jurisdiction issue under Maryland law.  The Court notes, however, that even under the analytical framework applied by the Fourth Circuit when evaluating the jurisdictional primacy of federal agencies, the MIA would still have primary jurisdiction over the state tort claims.  Specifically, Plaintiffs' Complaint raises factual questions that would require the Court to delve into appropriate insurance practices under Maryland law.  For example, the Maryland-law tort claims raised in Counts II and III, both of which appear to relate to allegedly improperly rerouted leads, alleged impermissible loss ratios, and alleged unlawful attempts to reduce insurance coverage in certain geographic areas relate directly to prohibitions imposed under Maryland's Insurance Article.  Thus, resolution of these claims would require factual and legal determinations regarding Maryland insurance law.

Maryland courts have further elucidated a four-factor test to determine whether the MIA has primary jurisdiction. Under this test, courts consider:

> 1) the comprehensiveness of the administrative remedy in addressing an aggrieved party's claim;
> 2) the administrative agency's view of its jurisdiction over the matter;
> 3) the claim's dependence upon the statutory scheme; and
> 4) the claim's dependence upon the administrative agency's expertise.

*United Ins. Co. of Am. v. Maryland Ins. Admin.*, 144 A.3d 1230, 1239 (Md. 2016) (citing *Zappone v. Liberty Life Ins. Co.*, 706 A.2d 1060, 1069–70 (Md. 1998)). Applying this four-factor test to Plaintiffs' Complaint in this case, Defendants assert that the MIA has primary jurisdiction over all claims. Before addressing these factors in turn, the Court reiterates that Plaintiffs' sparsely detailed Complaint alleges the following discriminatory treatment by Defendants: (1) Defendants rerouted leads according to the apparent race of the leads' names and reduced Plaintiffs' commissions, (ECF No. 1 ¶¶ 14, 15); (2) the MIA concluded that Erie Defendants used unlawful loss ratio metrics, (*id.* ¶ 17); (3) Defendants racially discriminated against Plaintiffs by imposing additional requirements and restrictions not applied to other agents, (*id.* ¶¶ 16, 19); (4) Defendants deliberately sought to reduce their footprint in areas with high minority populations, (*id.* ¶ 21).

### i.    Comprehensiveness of Statutory Scheme

Defendants argue that the administrative remedy available before the MIA is comprehensive because it enables the Maryland Commission on Civil Rights to intervene in the proceeding, and the MIA can conduct a "market conduct" examination of Erie's business practices and a Licensing Investigation that culminates in a written public report. (ECF No. 14-1 at 13–15.) Plaintiffs fail to address this point as to their tort claims but argue that the

MIA remedy would be inadequate as to their racial discrimination claim under § 1981. *See* (ECF No. 18 at 8.)   The Supreme Court of Maryland has explained that where a claim depends on a "statutory benchmark violation" contained in the Maryland Insurance Article, "the statutory remedy is deemed sufficiently comprehensive, and thus, the claim 'should be considered first by the administering agency.'" *United Ins. Co.*, 144 A.3d at 1240 (quoting *Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722, 735 (Md. 2011)).

In this case, Plaintiffs' tort claims in Counts II and III relate to their allegations that Defendants interfered with their acquisition of clients according to clients' race in order to reduce Defendants' footprint in areas with higher minority populations.  *See* (ECF No. 1 ¶¶ 21–23.)  Put differently, these claims assert that Defendants attempted to manipulate clients acquired via its producers—Plaintiffs—to avoid underwriting insureds in geographic areas with higher populations of individuals identifying as racial minorities.  Maryland courts have explicitly recognized that "no common law cause of action exists to recover damages for an insurer's refusal to underwrite an insured." *Magan v. Med. Mut. Liab. Ins. Soc. Of Md.*, 567 A.2d 503, 506 (Md. App. 1989); *see also Edelstein v. Nationwide Mut. Ins. Co.*, 250 A.2d 241, 245 (Md. 1969).   For this reason, the Appellate Court of Maryland has required exhaustion of administrative proceedings before the MIA prior to bringing a tort claim based on an insurer's refusal to underwrite certain parties.  *Magan*, 567 A.2d at 506–507.   The same is true here, where Plaintiffs' allegations in tort hinge on the "statutory benchmark violation" that Defendants violated Maryland laws that prohibit insurance companies from basing underwriting eligibility guidelines on race or refusing to issue or renew contracts solely based on a potential client's geographic area of Maryland.  MD. CODE ANN., INS. §§ 27-501(a); 19-

107(a).  Accordingly, the statutory remedy is sufficiently comprehensive, and these claims should be considered first by the MIA under the first factor.

Unlike Plaintiffs' tort claims in Counts II and III, however, their § 1981 claim in Count I is rooted in federal constitutional protections not comprehensively addressed by the Maryland Insurance Article.  As this Court has already recognized, Maryland courts require exhaustion of administrative remedies before the MIA unless "the causes of action are 'wholly independent of the Insurance Code' and do not require 'interpretations and or applications of the Insurance Code.'"  *Arthur v. Ticor Title Ins. Co. of Florida*, Civ. No. AMD-07-1737, 2008 WL 7854915, at *3 (D. Md. Mar. 11, 2008), *aff'd* 569 F.3d 154 (4th Cir. 2009) (quoting *Zappone*, 706 A.2d at 1071).  The primary substantive allegation in Plaintiffs' Count I is that Defendants imposed additional requirements on Plaintiffs as insurance producers for Defendants because of Ross's race.  *See* (ECF No. 1 ¶¶ 19, 16).  Under Count I Plaintiffs essentially allege that certain requirements or restrictions imposed upon them by Defendants were improperly based on race rather than legitimate insurance interests.  The Maryland Insurance Article explicitly addresses allegations of discriminatory actions in a written agreement with an insurance producer:

> Notwithstanding any other provision of this section, an insurer may not cancel or amend a written agreement with an insurance producer or refuse to accept business from the insurance producer if the cancellation, amendment, or refusal is arbitrary, capricious, unfair, or discriminatory or is based wholly or partly on the race, creed, color, sex, religion, national origin, or place of residency of the insurance producer or the applicants or policyholders of the insurance producer.

MD. CODE ANN., INS. § 27-503(d).  This same section of the Maryland Insurance Article also imposes requirements regarding loss ratios and reasons for rejecting business of an insurance producer on behalf of a prospective client.  *Id.* § 27-503(c), (e), (f).

"Section 1981 guarantees to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  By 1991 amendment to Section 1981, Congress defined "make and enforce contracts" to "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The Fourth Circuit has recognized that an action under § 1981 "then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)."  *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).  For the purposes of the first factor of primary jurisdiction under Maryland law, therefore, the salient question as to Plaintiffs' § 1981 claim is whether the alleged "racially discriminatory actions" as to the parties' contract depend on a "statutory benchmark violation" contained in the Maryland Insurance Article.  *See United Ins.*, 144 A.3d at 1240.

In this case, Plaintiffs' sparsely alleged Complaint does not provide any detail as to whether the alleged additional requirements related to an initial contract between the parties or a modification of that contract.  (ECF No. 1 ¶ 17–19.)  The Complaint alleges that the MIA has already determined that "the termination of the Ross Agency Agreement was due to unlawful loss ratio metrics imposed by Erie, targeting agencies in urban areas with large minority populations."  (ECF No. 1 ¶ 17.)  As discussed above, however, sections 27-503(d), (c), (e), and (f) of the Maryland Insurance Article define the parameters of permissible

restrictions and requirements for insurance agents under Maryland law. The requirements under section 27-503(d) to some extent parallel the protections of § 1981 by prohibiting discriminatory actions based on race. It also explicitly prohibits actions that are based in whole or in part on "place of residency of the insurance producer or the applicants or policyholders of the insurance producer." MD. CODE ANN., INS. § 27-503(d). Like this provision of the Maryland Insurance Article, however, § 1981 could also protect against geographic or place of residency discrimination to the extent such discrimination is a proxy for race.

The determination of Plaintiffs' § 1981 claim regarding termination or modification of their Agreement with Defendants thus does not depend on a threshold question of Maryland insurance law. *See* MD. CODE ANN., INS. § 27-503(f). Imposition of contractual obligations based on race is illegal under § 1981 regardless of the content of the Maryland Insurance article, so this claim is "wholly independent of the Insurance Code' and do[es] not require 'interpretations and or applications of the Insurance Code.'" *Arthur*, 2008 WL 7854915, at *3 (quoting *Zappone*, 706 A.2d at 1071). It is true that Defendants could argue that the restrictions were permissibly based on legitimate insurance interests, but that is a defense, not a threshold question to resolve a claim under § 1981. Accordingly, as to the § 1981 claim in Count I, the first factor disfavors any assertion that the Maryland Insurance Administration has primary jurisdiction.

### ii.    Administrative Agency's View of its Jurisdiction

It is undisputed that the MIA perceives that it has jurisdiction over this matter. All parties acknowledge the ongoing proceedings pending before the MIA. Moreover, Plaintiffs in their Motion to Stay assert that "[t]here is a pending administrative proceeding before the

Maryland Insurance Administration involving the same parties and substantially similar issues. Specifically, improper use of underwriting requirements to impede the issuance of insurance policies to qualified customers in racially disparate ways." (ECF No. 3 ¶ 2.) Accordingly, the second factor is met as to all claims.

### iii. The Claims' Dependence Upon the Statutory Scheme

"Whether a plaintiff's claim is dependent on the statutory scheme is accorded significant weight in determining the nature of an administrative remedy." *United Ins. Co.*, 144 A.3d at 23 (citing *Zappone*, 706 A.2d at 1070.) If a claim is even partially dependent on the statutory scheme, "the administrative remedy was intended to be primary." *Zappone*, 706 A.2d at 1070. As discussed above, Plaintiffs' allegations in Counts II and III are entirely dependent on the statutory scheme contained in the Maryland Insurance Article and its derivative regulations. Plaintiffs' allegations regarding improper underwriting policies arise directly from the language of sections 27-501(a) and 19-107(a) of the Maryland Insurance Article. MD. CODE ANN., INS. §§ 27-501(a); 19-107(a). Effectively, these sections govern the duties and obligations of insurers in Maryland. For this reason, this factor favors the MIA's primary jurisdiction as to the tort claims in Counts II and III but not as to the federal claim in Count I.

It does not appear that Plaintiffs' § 1981 claim depends on the Maryland Insurance Article. This claim seems to be styled as an assertion of racial discrimination against Plaintiffs by entities with whom Plaintiffs contracted. Such a claim does not depend on the existence of the Maryland Insurance Article but rather could arise between any two contracting parties under 42 U.S.C. § 1981. Notably, much of the caselaw cited by Defendants discusses the

MIA's primary jurisdiction in the context state tort causes of action, rather than federal causes of action. As such, Defendants have not met their burden to show that the MIA retains primary jurisdiction over a federal constitutional discrimination claim under § 1981 merely because that claim arose in relation to an insurance contract. For this reason, this factor does not favor the MIA's primary jurisdiction as to Count I.

### iv.     The Claim's Dependence Upon the Administrative Agency's Expertise

Whether the allegations in a judicial action depend on the expertise of the administrative agency is extremely significant to the determination of an agency's primary jurisdiction. *Zappone*, 706 A.2d at 1070. A claim that is wholly or partially dependent on an agency's expertise thus favors a finding of the administrative agency's primary jurisdiction. *United Ins. Co.*, 144 A.3d at 1245. A claim that depends "upon the contractual expectations of insurers and policyholders, the processes they utilize in administering insurance policies, the consequences of producing compliant policies, and the factors assessed in setting prices and valuing polices" has been deemed within the primary jurisdiction of the MIA. *Id.* at 1248.

In this case, the veracity and significance of Plaintiffs' allegations as to Defendants' alleged improper use of underwriting requirements to control issuance of insurance policies based on race—which undergird the tort claims in Counts II and III—heavily depend on the expertise of the MIA. Plaintiffs themselves provided a letter from the MIA regarding another administrative proceeding related to this action in which the MIA explained its factual findings regarding Erie's behavior and explained the regulatory framework surrounding underwriting requirements. *See* (ECF No. 18-1.) This document suggests that the determination of whether Defendants' conduct surrounding their underwriting policies was tortious depends on the

expertise of the MIA.    Furthermore, the thrust of Plaintiffs' tort claims in Counts II and III depends upon the processes by which Defendants administer their insurance policies, set prices, and value policies.  *See United Ins. Co.*, 144 A.3d at 1248.  Plaintiffs assert that their claims relate directly to Defendants' underwriting requirements, *see* (ECF No. 3 ¶ 2), which determine the prices, policies, and target areas an insurance company sets.  Such claims thus depend on the MIA's expert determination that Defendants underwrote policies for discriminatory reasons rather than legitimate business reasons.  *See, e.g.*, *Arthur v. Ticor Title Ins. Co. of Florida*, 569 F.3d 154, 161 (4th Cir. 2009) (collecting cases holding that partial dependence on MIA expertise means exhaustion is required).

The MIA's expertise could also be relevant to Plaintiffs' § 1981 claim.  Plaintiffs allege that Defendants imposed additional requirements on them because of Ross's race, but Defendants emphasize that such requirements were based on sound business reasons permissible under the Maryland Insurance Article.  (ECF No. 1 ¶ 19; ECF No. 14-1 at 21–22.) The Fourth Circuit has framed this dependence prong of the primary jurisdiction analysis as a question of whether a "claim will succeed only if plaintiffs show that [a defendant] violated the [Insurance] Code."  *Arthur*, 569 F.3d at 161.  In this case, Plaintiffs' § 1981 claim can succeed even absent proof that Defendants violated the Insurance Code, which only prohibits insurers from canceling or amending written agreements with insurance producers based on race.  *See* MD. CODE ANN., INS. § 27-503(d).  In this case, it is not yet clear on the face of Plaintiffs' Complaint whether the alleged additional contractual requirements based on race were imposed during the formation of agreements with Defendants, which would potentially violate 42 U.S.C. § 1981 without violating the Insurance Article.  Accordingly, Defendants

have not met their burden to demonstrate that Plaintiffs' § 1981 claim in Count I is within the primary jurisdiction of the MIA under the fourth primary jurisdiction factor.

In sum, Defendants have shown that the Maryland Insurance Administration has primary jurisdiction over Plaintiffs' tort law claims in Counts II and III, and this Court should not exercise its jurisdiction as to those claims. The MIA's primary jurisdiction invokes this Court's discretion to stay or dismiss the case without prejudice if the parties will not be unfairly disadvantaged. *Reiter*, 507 U.S. at 268–69. In this case, Defendants would not be unfairly disadvantaged by dismissal rather than a stay because they have moved for dismissal and oppose Plaintiffs' Motion to Stay. *See* (ECF Nos. 14; 15.) Although Plaintiffs have moved for a stay on the grounds that litigating the MIA proceedings and this action simultaneously will promote judicial economy and prevent hardship to Plaintiffs, (ECF No. 3 ¶¶ 2, 3, 5), they argue in their Opposition to Defendants Motion to Dismiss that dismissal without prejudice is appropriate if the Court determines that it lacks jurisdiction. *See* (ECF No. 18 at 15 ("Further, if the Court determines that it does not have subject matter at this time, dismissal without prejudice should be the determination and equitable tolling should apply.")).[12] Plaintiffs argue that they have filed this action "to preserve their federal claims while the administrative process plays out." (ECF No. 19 ¶ 3.) Plaintiffs, therefore, raise no argument that they would be unduly disadvantaged or prejudiced by dismissal rather than stay of their state claims.[13] Accordingly, Counts II and III will be DISMISSED WITHOUT PREJUDICE.

---

[12] Although Plaintiffs assert that equitable tolling should apply in the event of dismissal without prejudice, as explained above, the Court makes no determinations as to Defendants' limitations arguments or the applicability of any limitations defenses.

[13] Alternatively, this Court dismisses Counts II and III without prejudice on the basis that it declines to exercise its supplemental jurisdiction over those claims. As noted above, the Court has jurisdiction over the state law claims in Counts II and III solely based on supplemental jurisdiction because of Plaintiffs' § 1981 claim in

For the reasons explained above, Defendants' Motion (ECF No. 14) is GRANTED as to Counts II and III, which are DISMISSED WITHOUT PREJUDICE.[14]  Defendants have not shown, however, that the MIA has primary jurisdiction over Plaintiffs' § 1981 claim in Count I.  This Court accordingly evaluates that claim under Defendants' 12(b)(6) arguments.

## II.    Motion to Dismiss Under Rule 12(b)(6)

In their Motion to Dismiss, Defendants assert that Plaintiffs' § 1981 claim in Count I must be dismissed for failure to state a claim because it is time-barred, inapplicable to Individual Defendant Marrion, insufficiently pled as to Entity Defendants, and subject to both *Younger* and *Burford* abstention.[15]  (ECF No. 14-1 at 4–6, 23–24).  In opposition, Plaintiffs argue that the claim is not time-barred, abstention is inapplicable, and liability under § 1981 is properly alleged against all Defendants.  (ECF No. 18 at 5–14.)

As an initial matter, the Court notes that it cannot consider Defendants' assertion that Plaintiffs' § 1981 claim in Count I should be dismissed as time-barred, because that argument depends on exhibits to their Motion to Dismiss relating to an MIA proceeding in which

---

Count I.  *See* (ECF No. 1 ¶ 1).  As the Fourth Circuit has explained, "a district court 'may decline to exercise supplemental jurisdiction' when it 'has dismissed all claims over which it has original jurisdiction." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting 28 U.S.C. § 1367(c)).  For this reason, "[g]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018).  For the reasons explained below, the Court dismisses without prejudice the federal claim contained in Count I.  Thus, even if this Court had not determined that the doctrine of primary jurisdiction applied to Plaintiffs' state law claims, the Court would decline to exercise its supplemental jurisdiction over those claims due to the dismissal of the sole federal question claim in Count I.  Accordingly, dismissal without prejudice based on this Court's decision to decline to exercise supplemental jurisdiction forms an alternative basis for dismissal without prejudice as to Counts II and III.

[14]  Although Defendants seek dismissal with prejudice, the doctrine of primary jurisdiction does not authorize dismissal with prejudice.  *Smith*, 796 F.3d at 431.

[15]  As noted above, the *Younger* and *Burford* abstention doctrines enable a federal court to decline to exercise its jurisdiction where the parties are engaged in ongoing state proceedings.  *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971).

Plaintiffs apparently alleged that they received a termination letter from Defendants on May 14, 2020. (ECF No. 14-3 ¶ 29.) Actions brought under 42 U.S.C. § 1981 based on claims that arose after 1990 are subject to the four-year statute of limitations contained in 28 U.S.C. § 1658. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421 (4th Cir. 2004). "Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Even so, the Court does not reach this limitations argument because it would require consideration of matters outside the pleadings. To consider matters outside the pleadings on a motion to dismiss, a court must either (1) convert the motion to dismiss to a motion for summary judgment, *see* FED. R. CIV. P. 12(d), or (2) determine that the document is attached to the motion to dismiss and incorporated by reference in the plaintiff's complaint *or* referenced in and integral to the complaint, *see Gaines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016). In this case, Plaintiffs' Complaint references their MIA actions generally— noting their basis and, where applicable, outcome—but does not explicitly refer to the MIA complaint itself. It is also not clear that the MIA action, which allegedly related to loss ratio metrics, is integral to Plaintiffs' § 1981 claim, and Plaintiffs do not refer to the MIA complaint document in their Complaint before this Court. *See* (ECF No. 1 ¶ 17 (referring to MIA action generally, including outcome).) Thus, the Court would need to act in its discretion to convert this motion to dismiss to a motion for summary judgment to properly consider the MIA Complaint. Given that the parties have not had "opportunity for reasonable discovery," the Court declines to convert Defendants' Motion here. *See Warner v. Quilo*, Civ. No. ELH-12-

248, 2012 WL 3065358, at *2 (D. Md. July 26, 2012) ("A district judge 'has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." (citation omitted).); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery.").

While the Court makes no determination at this stage as to whether Plaintiffs' § 1981 claim is time-barred, that claim is insufficiently alleged against Individual Defendant Marrion and Entity Defendants under the Rule 12(b)(6) standard.  The allegations contained in Count I are remarkably sparse and unclear.  Specifically, it is not clear from the Complaint the degree to which Plaintiffs attempt to allege Defendants' use of unlawful loss ratio metrics under their § 1981 claim.  To the extent that they so allege, that portion of the claim cannot be sufficiently alleged because the Fourth Circuit has held that an insurance agent lacks standing under 42 U.S.C. § 1981 to challenge discriminatory insurance practices—such as redlining—against possible clients.  *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 421 (4th Cir. 1984).   Rather, an insurance agent may only raise a § 1981 claim against an insurance company or its employees to the extent that the challenge arises from the agent's contract with those parties.  *See id.* at 422 (explaining § 1981 suit based on discriminatory practices affecting insureds is barred by limitations of prudential standing because insureds can raise their own challenges).  That is, Plaintiffs have standing to raise Count I only as to their allegation that Defendants imposed additional requirements and restrictions on them as a contracting party under the Ross Agency Agreement because of Ross's race.

29

To allege a cognizable claim of discrimination under 42 U.S.C. § 1981, a plaintiff must allege "(1) that he 'is a member of a protected class'; (2) 'that the defendant had the intent to discriminate [against him] on the basis of race'; and (3) that the discrimination interfered with his right to contract." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 279–80 (4th Cir. 2001) (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 1102 (10th Cir. 2001)). Furthermore, to allege a § 1981 claim against an *individual* defendant, a plaintiff must make an additional showing that the individual defendant "intentionally and personally participated in Plaintiffs' deprivation of rights." *Brown v. Balt. Police Dep't*, Civ. No. RDB-11-0136, 2011 WL 6415366, at *8 (D. Md. Dec. 21, 2011); *Hawthorne v. Virginia State Univ.*, 568 F. App'x 203, 204–205 (4th Cir. 2014).

In this case, Plaintiffs' § 1981 claim consists solely of the bare allegation that "Defendants discriminated against Plaintiffs based on their race and as an African American-owned business, imposing additional requirements and restrictions not applied to other agents." (ECF No. 1 ¶ 19.) This conclusory allegation is devoid of factual detail regarding how the discrimination interfered with Plaintiffs' right to contract, and the Complaint does not provide facts to elucidate the content of the additional requirements and restrictions. Plaintiffs' bare and conclusory assertion is the precise sort of allegation that the Supreme Court has deemed inadequate under the Rule 12(b)(6) pleading standard. *Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]"). Moreover, as to Individual Defendant Marrion, the allegations are insufficient even to recite the elements of a § 1981 claim because the Complaint does not allege that he intentionally or personally participated in

30

the alleged discrimination. *See Hawthorne*, 568 F. App'x at 204–205. This claim must be dismissed as to all Defendants, and Defendants' Motion is GRANTED pursuant to Rule 12(b)(6) as to the § 1981 claim contained in Count I. As further explained below, Count I is DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint within fourteen days of the date of this Memorandum Opinion and Order.[16]

### III.    Motion to Stay

As explained above, the doctrine of primary jurisdiction applies to the tort claims raised in Counts II and III, and the 42 U.S.C. § 1981 claim raised in Count I must be dismissed for failure to state a claim. All claims have been dismissed without prejudice, and, therefore, Plaintiffs' Motion to Stay (ECF No. 3) is MOOT as to all claims.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss (ECF No. 14) is GRANTED and Plaintiffs' Motion to Stay (ECF No. 3) is MOOT. Specifically, Counts II and III are DISMISSED WITHOUT PREJUDICE pending resolution of the proceedings presently pending before the Maryland Insurance Administration.[17] As explained above, Count I is DISMISSED WITHOUT PREJUDICE to the filing of an Amended Complaint. Additionally, to the extent that Plaintiffs seek to allege a § 1981 claim against Flagship City

---

[16] Defendants raise several other arguments—including application of *Burford* and *Younger* abstention—in their Motion pursuant to Rule 12(b)(6). The Court does not reach these arguments because it has determined that Plaintiffs' § 1981 claim is insufficiently alleged under Rule 12(b)(6). *See Denny's, Inc. v. Cake*, 364 F.3d 521, 531 n.10 (4th Cir. 2004) (declining to reach *Younger* abstention based on conclusion that Complaint was insufficiently pled under Rule 12(b)(6)).

[17] As explained above, although dismissal of Counts II and III must be without prejudice under the primary jurisdiction doctrine, amendment of these claims would be futile because primary jurisdiction lies with the MIA.

Insurance Company in their Amended Complaint, Plaintiffs must properly caption their Complaint and properly effectuate service of process upon Flagship.

Generally, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Rule 15(a). Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). However, there is authority that leave to amend does not need to be granted unless requested by the plaintiff. *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode*, 807 F.3d at 624.

This Court deems it prudent to afford Plaintiffs the opportunity to amend their Complaint as to the federal claim in Count I. As explained above, Plaintiffs have failed to allege an action under 42 U.S.C. § 1981 as to any Defendants. Nevertheless, Plaintiffs may file an Amended Complaint within fourteen days of this Memorandum Opinion, i.e., by April 14th, 2025. Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). Accordingly, the DISMISSAL of Count I will initially be WITHOUT PREJUDICE. If an Amended Complaint is not filed by April 14th, 2025, then Count I shall be dismissed with prejudice

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: March 31, 2025