IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ZERITA L. ROSS, *et al.*,                          *

      *Plaintiffs*,                              *

      v.                                        *       Civil Action No. RDB-24-2414

ERIE INSURANCE EXCHANGE, *et al.*,                 *

      *Defendants*.                              *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

This federal civil rights action arises from a business relationship between Plaintiffs Zerita L. Ross ("Individual Plaintiff" or "Ms. Ross"), her company, Ross Insurance Agency, Inc. ("Corporate Plaintiff" or "Ross Insurance") (collectively, "Plaintiffs") and the companies for which they sold insurance. (ECF No. 27 ¶¶ 3–12.) Ms. Ross is an African American woman who serves as principal of Ross Insurance and has sold insurance in Maryland since 1998. (*Id.* ¶¶ 3, 13.) Plaintiffs allege that between September 1, 1998, and *August 21, 2020,* they experienced racial discrimination while selling insurance for various Erie insurance companies. (*Id.* ¶¶ 13, 16.) On *August 20, 2024,* Plaintiffs initiated the instant action by filing a three-count Complaint in this Court against Defendants Erie Insurance Exchange; Erie Insurance Company; Erie Insurance Property & Casualty Company; Erie Family Life Insurance Company (collectively, "Original Entity Defendants"), and Kristopher C. Marrion ("Individual Defendant" or "Mr. Marrion") (collectively, "Original Defendants").[1] (ECF No.

---

[1] Plaintiffs' Complaint also contained substantive allegations against Flagship City Insurance Company ("Flagship"), but Plaintiffs did not name Flagship as a defendant in the caption and did not attempt to serve

1.)  Plaintiffs alleged against all Original Defendants race discrimination in violation of 42

U.S.C. § 1981 (Count I); intentional interference with economic relations (Count II); and

respondeat superior (Count III).  (*Id.*)

By Memorandum Opinion and Order dated March 31, 2025, this Court granted

Original Defendants' Motion to Dismiss (ECF No. 14) but allowed Plaintiffs leave to amend

their § 1981 claim in Count I.[2]  On April 14, 2025, Plaintiffs filed the operative, two-Count

Amended Complaint (ECF No. 27) against Original Entity Defendants, Flagship City

Insurance Company ("Flagship"),[3] (collectively with Flagship and Original Entity Defendants,

"Erie Defendants"), Erie Insurance Company of New York ("Erie Insurance New York"),[4]

and Mr. Marrion (collectively, "Defendants").  Specifically, they allege (1) violation of 42

U.S.C. § 1981 against Erie Defendants (Count I); and (2) violation of 42 U.S.C. § 1981 against

Mr. Marrion (Count II).  *See generally* (ECF No. 27 at 12–14.)  Presently pending before this

Court is Defendants' Motion to Dismiss the Amended Complaint (ECF No. 34)

("Defendants' Motion").  Plaintiffs have responded in Opposition (ECF No. 36), and

---

summons or process upon Flagship.  Even so, Flagship was on notice of this action and joined in Defendants' filings, but expressly reserved defenses related to improper service.  *See, e.g.*, (ECF No. 14-1 at 1 n.2).

[2]  As explained in this Court's Memorandum Opinion (ECF No. 25) dated March 31, 2025, the Maryland Insurance Administration ("MIA") has primary jurisdiction over the state tort claims alleged in Counts II and III of Plaintiffs' original Complaint.  Where a state agency has primary jurisdiction, a Court may either stay a case or dismiss the case without prejudice, but it cannot hear those claims until the agency proceedings have concluded.  *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 431 (4th Cir. 2015) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993)).

[3]  Flagship is the subsidiary of ERIE Insurance Exchange, which owns one hundred percent of the stock of Flagship.  (ECF No. 35 at 1.)  Flagship is affiliated with ERIE Insurance Company; ERIE Insurance Property & Casualty Company; and ERIE Family Life Insurance Company, each of which is one hundred percent owned by ERIE Insurance Exchange.  (*Id.*)

[4]  As explained further below, Erie Insurance New York was not a party to the original Complaint, *see* (ECF No. 1), and is not included in Plaintiffs' definition of "Erie Entity Defendants" in the Amended Complaint, (ECF No. 27 ¶¶ 5–11).

Defendants have replied (ECF No. 37).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).

As explained below, Plaintiffs' claims against Erie Defendants, Mr. Marrion, and newly named defendant Erie Insurance New York are untimely under the four-year statute of limitations applicable to claims of post-contract racial discrimination in violation of 42 U.S.C. § 1981.  First, as to Erie Defendants and Mr. Marrion, Plaintiffs received notice of the termination of their agency agreements—Defendants' latest alleged discriminatory act—on May 14, 2020.  Thus, under the applicable four-year statute of limitations, Plaintiffs were required to file their § 1981 claims no later than May 14, 2024.  Nevertheless, they waited until August 20, 2024, to file the instant action, thereby rendering their claims untimely.  Second, Plaintiffs did not name Erie Insurance New York as defendant until they filed their Amended Complaint on April 14, 2025.  Accordingly, any claims against Erie Insurance New York are time-barred under the four-year limitations period that terminated on May 14, 2024.  Alternatively, even if Plaintiffs had timely filed their claims, they have failed to state a claim of individual liability against Mr. Marrion and likely cannot raise allegations of redlining as the basis of their § 1981 claim against Erie Defendants.  Accordingly, for the reasons set forth below, Defendants' Motion to Dismiss (ECF No. 34) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise

indicated, the following facts are derived from Plaintiffs' Amended Complaint (ECF No. 27) and accepted as true for the purpose of Defendants' Motion to Dismiss (ECF No. 34). Plaintiffs' Amended Complaint contains allegations specific to their relationship with Defendants and broader allegations involving proceedings before the Maryland Insurance Administration ("MIA").

## I.    Allegations specific to Plaintiffs' relationship with Defendants

Plaintiff Zerita L. Ross ("Ms. Ross") alleges that she is an African American woman who owns and operates Plaintiff Ross Insurance Agency ("Ross Insurance").  (ECF No. 27 ¶¶ 3, 4.)  Between September 1, 1998, and August 21, 2020, Plaintiffs sold insurance pursuant to multiple "agency agreements" with Erie Defendants.  (*Id.* ¶¶ 13, 18.)  Plaintiffs primarily sold insurance to majority-Black communities in Baltimore City and Prince George's County, and, during this period, Ms. Ross developed a book of business worth nearly $4 million based on services to more than 2,600 insureds.  (*Id.* ¶¶ 3, 15.)  Plaintiffs allege that Erie Defendants racially discriminated against them between 2002 and the termination of the agency agreements in 2020.  *See generally* (*id.* ¶¶ 15–20.)  Specifically, Plaintiffs allege that beginning in April 2002, Erie Defendants "interfered with [Ms. Ross's] ability to enter contracts with prospective insureds in the greater Baltimore area" by (1) engaging in discriminatory lead distribution to reroute to Ms. Ross leads with names that sounded African American or Hispanic and divert from her leads with names that sounded European or European American; (2) racially profiling leads by requiring Ms. Ross and similarly situated agents to review applicants' criminal histories and deny appropriate coverage to applicants and covered individuals; (3) arbitrarily reducing Ms. Ross's commission between 2003 and 2021; and

(4) requiring Ms. Ross—but not non-African American agents—to impose on her insureds and applicants additional requirements such as background checks and improper site visits. (*Id.* ¶ 16.)

Additionally, Plaintiffs allege that Mr. Marrion, in his capacity as "Vice President and Branch Manager of Erie's Silver Spring Branch" since May 2011, and his predecessor, Ms. Sandra I. Dorsey ("Ms. Dorsey"),[5] discriminated against Ms. Ross and other African American agencies based on their race. (*Id.* ¶ 20.) Plaintiffs allege that Mr. Marrion and Ms. Dorsey engaged in discriminatory supervision and discipline that included: (1) Ms. Dorsey's letter dated October 29, 2012, which reduced Plaintiffs' commission;[6] (2) Ms. Dorsey's letter dated March 4, 2016, which reduced Plaintiffs' "Private Passenger Auto commissions by 2%;" (3) Mr. Marrion's August 2019 warning letter "citing pretextual performance issues;" and (4) Mr. Marrion's May 14, 2020 termination letter. (*Id.*) Plaintiffs allege that Mr. Marrion and Ms. Dorsey committed these actions at the direction of Erie Defendants. (*Id.*) Specifically, Plaintiffs allege that Erie Defendants acted through branch managers such as Mr. Marrion to discriminate against "minority-serving agents" by implementing or using (1) "'front line underwriting' to discourage writing policies in urban areas;"[7] (2) "uniform loss ratio

---

[5]  Ms. Dorsey is not a named defendant in this action.

[6]  Plaintiffs state that Defendants reduced "Ross's commission," but they do not clarify whether "Ross" refers to Ms. Ross, Ross Insurance, or both. Construing the facts in the light most favorable to Plaintiffs, this Court generally assumes without deciding that "Ross" refers to both Plaintiffs collectively. Where allegations in the Amended Complaint refer to Ross using the pronouns "her" or "she," however, the Court treats "Ross" as referring to Ms. Ross alone.

[7]  Although Plaintiffs do not define "front line underwriting," the MIA Determination Letter attached as Exhibit B to the Amended Complaint explains that "'Front Line' Underwriting' refers to a system of asking insurance producers to ensure that they develop relationships with clients of an appropriate risk level, thereby enabling producers to use ill-defined, relationship-based risk metrics that are stricter than documented risk metrics to deny coverage to covered applicants. (ECF No. 27 Ex. B. at 12.)

benchmarks that ignored territorial risk differences;"[8] and (3) "progressive disciplinary measures against agents serving minority communities."  (*Id.* ¶ 24.)

Additionally, Plaintiffs allege that between 2012 and 2020, Erie Defendants impermissibly reduced commissions for the eight "minority-owned agencies serving majority-Black ZIP codes."  (*Id.* ¶ 23(a).)  As part of these reductions, Plaintiffs faced commission reductions of two percent in 2012—despite a 75.58 percent loss ratio—while non-minority agents in majority-white areas such as Carroll County retained their full commissions.  (*Id.*)  Plaintiffs further allege that all twelve agents that Erie Defendants terminated in Maryland between 2016 and 2020 served "majority-minority ZIP codes" and no agents in "majority-white areas were terminated, even with comparable loss ratios."  (*Id.* ¶ 23(b).)

On May 14, 2020, Mr. Marrion acted in his capacity as "Vice President and Branch Manager of Erie's Silver Spring Branch"[9]  to issue a termination notice ("Termination Letter") to Ms. Ross, which terminated two agency agreements—dated January 23, 2012, and March 6, 2012, respectively—between Plaintiffs and Erie Defendants.[10]  (*Id.* ¶ 18); *see also* (ECF No. 27 Ex. A (Termination Letter).)  These terminations suspended Plaintiffs' binding authority—

---

[8]  According to the MIA Determination Letter, an "[a]dverse loss ratio is a metric used to reflect the degree of an insurer's profitability . . . an Insurer's loss ratio is largely a function of its own business decisions, specifically, its underwriting eligibility guidelines (which risks it is willing to write) and its rating plan (how much it charges to write those risks)."  (ECF No. 27 Ex. B at 10.)

[9]  As noted above, Plaintiffs do not clearly define "Erie" but rather assert that "Defendant entities are related and affiliated entities whose acts complained of were committed as if a single entity, and will be referenced hereinafter as 'Erie'."  (ECF No. 27 ¶ 11.)  Thus, it is not entirely clear which Erie Defendant Mr. Marrion served.

[10]  The Termination Letter provided notice of termination of (1) "the Agency Agreement dated January 23, 2012 between [Ms. Ross] and Erie Insurance Exchange, Erie Insurance Company, Erie Insurance Company of New York, Erie Insurance Property & Casualty Company, Flagship . . . and Erie Family Life Insurance Company"; and (2) "the Agency Agreement dated March 6, 2012 between [Ross Insurance] and Erie Insurance Exchange, Erie Insurance Company, Erie Insurance Company of New York, Erie Insurance Property & Casualty Company, Flagship . . . and Erie Family Life Insurance Company."  (ECF No. 27 Ex. A at 1.)

including their authority "to write or bind any new business on behalf of ERIE without specific written approval of ERIE"—and took effect on August 21, 2020. (ECF No. 27 ¶¶ 18, 19; ECF No. 27 Ex. A at 4.) Plaintiffs allege that this suspension "intentionally constrained and limited [Ms.] Ross's ability to do business and earn income on the basis of her race." (ECF No. 27 ¶ 19.) Plaintiffs allege that Mr. Marrion cited "low engagement in training" and "missed meetings" to terminate them, but internal documents show that (1) Erie Defendants used "'proxy metrics' to terminate urban agents while concealing reliance on loss ratios," and (2) non-minority agents with worse attendance faced no discipline. (*Id.* ¶ 25.)

Plaintiffs further allege that during performance reviews they faced criticism for "not matching the Erie Corp culture," which Plaintiffs allege was a subjective standard not applied to agents in majority-white areas. (*Id.* ¶ 27.) Similarly, Plaintiffs allege that Erie Defendants denied Ms. Ross access to Erie Defendants' "Agents Giving Back program, which provided $1,000–$5,000 annually to agents in majority-white areas for community outreach;" denied marketing support for new customers; and prevented her from qualifying for bonuses based on unlawful applications of loss ratios. (*Id.* ¶ 28.) Plaintiffs further allege that Erie Defendants' "Agent Front Line Underwriting Guide" instructed agents to reject applicants in urban areas using stricter criteria than filed guidelines, which reduced policies in majority-Black ZIP codes by 23 percent between 2016 and 2020. (*Id.* ¶ 26(a).) Relatedly, Plaintiffs allege that agents serving Baltimore City faced loss ratios 35 percent higher than suburban agents, but they still were held to uniform benchmarks. (*Id.* ¶ 26(b).)

On May 24, 2023, the Maryland Insurance Administration ("MIA") determined that Erie Defendants' termination of Plaintiffs' agency agreements impermissibly relied on loss

ratios and proxy metrics in violation of Maryland Insurance Article §§ 27-503(d), (f).[11]  (ECF No. 27 ¶ 21; ECF No. 27 Ex. B.)  The MIA issued a Determination Letter explaining its conclusions and ordering Erie Defendants to reinstate Plaintiffs' agency agreements and commissions, but Erie Defendants did not comply with such orders.  (ECF No. 27 ¶ 21(b); ECF No. 27 Ex. B.)  Plaintiffs allege that such ongoing failure to restore the agency agreements and commissions constitutes an ongoing harm.  (ECF No. 27 ¶ 29.)  Defendants assert that the MIA's Determination Letter "is presently on appeal."  (ECF No. 34-1 at 28.)

## II.    Maryland Insurance Administration Market Conduct Report

In response to complaints by Plaintiffs and two insurance brokerages in 2021, the MIA conducted a market conduct examination of "Erie Insurance Group"[12] for the period between 2016 and 2020.  (ECF No. 27 ¶¶ 30, 31.)  This examination allegedly uncovered unlawful practices that disproportionately affected urban areas such as Baltimore City, Maryland.  (*Id.* ¶ 30); (ECF No. 27 Ex. C.  According to the resulting Market Conduct Report ("Report"), this examination revealed that Erie Insurance Group violated Maryland law by instructing agents to engage in "front-line underwriting" to reject qualified applicants—that is, applicants who met filed underwriting eligibility guidelines—who may be unprofitable for the companies. (ECF No. 27 ¶¶ 32, 33.)  The MIA examination revealed that Erie Insurance Group penalized agents whose business resulted in loss ratios that deviated from the companies' statewide goals

---

[11]  The Amended Complaint contains no allegations regarding whether or when Plaintiffs filed a complaint before the MIA.  For completeness, the Court notes that Plaintiffs' original Complaint alleged that they reported their grievances to the MIA.  *See* (ECF No. 25 at 4 (citing ECF No. 1 ¶ 17)).

[12]  According to the Market Conduct Examination Report attached as Exhibit C to Plaintiffs' Amended Complaint, the MIA examined the practices of Erie Insurance Company, Erie Insurance Exchange, and Erie Family Life Insurance Company.  (ECF No. 27 Ex. C at 1.)  For clarity, and because not all Erie Defendants in this case are named in the MIA Market Conduct Examination, this Court refers to the Erie companies subject to the MIA's market conduct examination as "Erie Insurance Group" or "subject Erie companies."

by (1) reducing commissions; (2) terminating agency agreements; (3) restricting agents' binding authority; (4) reducing or eliminating access to customer leads and imposing additional business requirements on such agents; and (5) limiting or restricting access to business development programs and canceling opportunities for incentive or bonus pay based on unlawful applications of loss ratio metrics.  (*Id.* ¶ 35(a)–(e).)

Additionally, the MIA examination revealed that the application of uniform, statewide loss ratio standards to all Maryland insurance agencies disadvantaged agencies such as Ross Insurance, which wrote business in high-loss regions with large minority populations.  (*Id.* ¶ 36.)  Between January 2016 and December 31, 2020, for example, the number of new Personal Private Auto insurance policies issued in Maryland declined by 23.57 percent, but Baltimore City faced an even steeper decline of 41.31 percent.  (ECF No. 27 Ex. C at 35.)  Plaintiffs allege that they personally experienced many of these findings, and the MIA comparison revealed that agencies such as Plaintiffs faced higher penalty rates than other agencies. (ECF No. 27 ¶¶ 35(f), 38.)  Although Erie Insurance Group filed a Written Response disputing the MIA's findings, it did not formally appeal the Market Conduct Report.  (ECF No. 27 Ex. Q.)

### III.    Procedural History

In November 2022, Plaintiffs filed a lawsuit against Original Defendants in this Court (Civil No. JRR-22-2868) ("*Ross I*").[13]  (ECF No. 25 at 5.)  In *Ross I*, Plaintiffs alleged racial

---

[13]  Although these facts are not alleged in Plaintiffs' Amended Complaint, this Court draws them from its prior Memorandum Opinion (ECF No. 25), which included them as relevant procedural background.  A motion to dismiss under Rule 12(b)(6) is ordinarily limited to the pleadings, and a Court must convert such a motion to a motion for summary judgment if it wishes to consider matters outside the pleadings.  *See* FED. R. CIV. P. 12(d). A court may, however, "take judicial notice of its own records," including its own prior opinions and filings, without converting a motion under Rule 12(b)(6) to a motion for summary judgment. *Mitchell v. Henderson*, 128

discrimination in violation of 42 U.S.C. § 1981; intentional interference with economic relations; and respondeat superior as to the Erie Defendants.  (Civ. No. JRR-22-2868, ECF No. 1 ¶¶ 43–90.)  *Ross I* was dismissed without prejudice on March 8, 2023, based on Plaintiffs' failure to exhaust their administrative remedies before the MIA.[14]  (Civ. No. JRR-22-2868, ECF No. 41 at 77–88.)   On August 20, 2024, Plaintiffs initiated the instant action by filing a three-Count Complaint in this Court, once again alleging against Defendants race discrimination in violation of 42 U.S.C. § 1981 (Count I); intentional interference with economic relations (Count II); and respondeat superior (Count III).  (ECF No. 1.)   By Memorandum Opinion (ECF No. 25) and Order (ECF No. 26) dated March 31, 2025, this Court dismissed those claims with leave to amend the § 1981 claim in Count I.

On April 14, 2025, Plaintiffs filed an Amended Complaint (ECF No. 27) in which they allege race discrimination in violation of 42 U.S.C. § 1981 against Erie Defendants (Count I) and against Mr. Marrion (Count II).  (ECF No. 27.)   In Count I, they allege that Erie Defendants' termination, commission reductions, and policy of redlining were motivated by racial animus because (1) 100 percent of terminated agents served minority areas, and (2) internal communications reveal that executives connected terminations to "'historically unprofitable' urban/minority areas."  (*Id.* ¶ 40.)   Moreover, they allege that these policies

---

F. Supp. 2d 298, 301 (D. Md. 2001).  Accordingly, in this case, the Court considers the filing of *Ross I* without converting Defendants' Motion to a motion for summary judgment.

[14]  Plaintiffs do not argue that their claim relates back to *Ross I* for the purposes of the parties' limitations dispute, discussed *infra*.  As Judge Bredar of this Court has noted, "numerous courts have recognized that the 'dismissal of an earlier suit . . . without prejudice does not authorize a subsequent suit brought outside of the otherwise binding period of limitations."  *Degross v. Off. Depot, LLC*, Civ. No. JKB-22-0291, 2023 WL 2456830, at *4 (D. Md. Mar. 10, 2023) (quoting *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004) (collecting cases)); *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982)); *Goff v. United States*, 659 F.2d 560, 562 (5th Cir. 1981).

(1) caused a 23 percent decline in policies in majority-Black ZIP Codes versus a 14 percent increase in majority-white areas, and (2) intentionally economically harmed Plaintiffs by interfering with Ms. Ross's ability to write new policies.  (*Id.* ¶ 41.)  They allege that Erie Defendants' refusal to comply with the MIA's reinstatement order constitutes ongoing interference with "Ms. Ross's ability to make money off of business she developed . . . ."  (*Id.* ¶ 42.)

In Count II, Plaintiffs allege that Mr. Marrion personally participated in discriminatory conduct within the scope of his employment as Vice President and Branch Manager by (1) drafting and sending the Termination Letter dated May 14, 2020; (2) implementing and enforcing Erie Defendants' discriminatory policies against Plaintiffs and others; (3) continuing his predecessor's pattern of discriminatory supervision; and (4) applying more stringent performance standards to Ms. Ross than to non-minority agents.  (*Id.* ¶¶ 45, 46.)  Plaintiffs allege that Mr. Marrion engaged in these discriminatory actions at the direction and on behalf of "all six Erie entity defendants" such that they are vicariously liable for his conduct.  (*Id.* ¶¶ 46–49.)  Plaintiffs seek monetary damages and declaratory and injunctive relief, including reinstatement of their agency agreement and commissions, damages, and an injunction barring Erie Defendants from using proxy metrics or loss ratios to discipline agents.  (*Id.* ¶¶ 50–54.)

In response to Plaintiffs' Amended Complaint, Defendants timely filed a Motion to Dismiss (ECF No. 34).  In short, Defendants contend that Plaintiffs' § 1981 claims are time-barred, inadequately alleged, or, alternatively, subject to various abstention doctrines.  *See generally* (ECF No. 34-1).  Plaintiffs have responded in Opposition (ECF No. 36), and Defendants have replied (ECF No. 37).  This matter is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

In their Motion to Dismiss (ECF No. 34) and related briefing, Defendants argue that Plaintiffs' Amended Complaint must be dismissed with prejudice as time-barred, inadequately alleged, or, alternatively, subject to various abstention doctrines. *See generally* (ECF No. 34-1; ECF No. 37). In Opposition (ECF No. 36), Plaintiffs contend that the continuing violation doctrine applies to their discrimination claims such that neither claim is time-barred; they have adequately alleged their § 1981 claims, including individual, corporate, and vicarious liability; abstention doctrines do not apply to this case; and they have standing to raise each of their claims. *See generally* (*id.* at 1–5). As explained below, Plaintiffs' claims are untimely as outside the four-year statute of limitations applicable to claims under 42 U.S.C. § 1981.

Generally, "[a] motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg, & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Thus, a court may only address "the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred . . . in the relatively rare circumstances where . . . all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Forst*, 4 F.3d at 250); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Additionally, even where consideration of an affirmative defense is appropriate on a Rule 12(b)(6) motion, "the defendant must show 'that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint.'" *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (quoting *Goodman*, 494 F.3d at 466). Plaintiffs allege in their Amended Complaint that Defendants

engaged in a pattern of discrimination dating back to at least 2012; Mr. Marrion drafted and issued the Termination Letter on behalf of Erie Defendants on May 14, 2020; and the termination took effect on August 21, 2020.[15]  (ECF No. 27 ¶¶ 18, 20, 45.)  Accordingly, the last possible date on which any discrimination is alleged is August 21, 2020, and "all facts necessary to the affirmative defense [that Plaintiffs' claims are time-barred] 'clearly appear[] *on the face of the complaint*.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250).  For this reason, consideration of Defendants' asserted limitations defense is appropriate in this case.

Actions under 42 U.S.C. § 1981 based on claims that allege post-contract discrimination and arose after 1990 are subject to the four-year statute of limitations contained in "28 U.S.C. § 1658, which established a catchall *four*-year statute of limitations for federal claims 'arising under' any act of Congress that was enacted after December 1, 1990, unless the act provided its own statute of limitations."  *Chambers v. North Carolina Dep't of Just.*, 66 F.4th 139, 141–42 (4th Cir. 2023) (quoting 28 U.S.C. § 1658(a)).  "Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Nassim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).  For the purposes of accrual, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act became painful."  *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).  For this reason, "a discriminatory discharge claim accrues when the employee receives notice of the termination,

---

[15]  Plaintiffs also attach the Termination Letter as an exhibit to the Amended Complaint, thereby incorporating it by reference.  *See* (ECF No. 27 Ex. A).

not on the last day of employment." *Smith v. Univ. of Md. Balt.*, 770 F. App'x 50 (4th Cir. 2019) (unpublished) (citing *Chardon*, 454 U.S. at 7–8).

Notwithstanding this four-year limitations period, the continuing violation doctrine "permits 'incidents outside of the statutory period to survive if they relate to a timely incident as a series of separate but related acts amounting to a continuing violation.'" *Karim v. Staples*, 210 F. Supp. 2d 737, 749 (D. Md. 2002) (quoting *Lambert v. Washington Suburban Sanitary Comm'n*, 93 F. Supp. 2d 639, 642 (D. Md. 2000)). Put differently, where a plaintiff alleges a series of related, repetitive discriminatory acts such as a hostile work environment, her claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corps. v. Morgan*, 536 U.S. 101, 122 (2002). Significantly, "only where an actual violation has occurred within the requisite time period . . . can the theory of the continuous violation doctrine possibly be sustained." *Thompson v. Town of Front Royal*, 117 F. Supp. 2d 522, 526 (W.D. Va. 2000) (collecting cases); *see also Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999) ("[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation[.]" (quoting *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991))); *Hill v. AT&T Techs., Inc.*, 731 F.2d 175, 180 (4th Cir. 1984) ("It is *only* where an actual violation has occurred within that requisite time period . . . that under any possible circumstances the theory of continuing violation is sustainable." (quoting *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983)))).

The parties in this case dispute the date of accrual of Plaintiffs' § 1981 claims. Defendants contend that Plaintiffs' claims accrued at the latest on May 14, 2020, when

Defendants issued the Termination Letter. (ECF No. 34-1 at 11–12.) Specifically, Defendants argue that the limitations period for any claim based on commission reductions in 2012 and 2016 concluded within four years of the date of such reductions, and the limitations period for any claim based on termination concluded on May 14, 2024, four years after Plaintiffs received the Termination Letter. (*Id.* at 8.) Thus, Defendants contend that Plaintiffs' claims are untimely because they did not file this action until August 20, 2024. *See generally* (*id.* at 6–10). In Opposition, Plaintiffs contend that the continuing violation doctrine applies to their allegations of a pattern of discrimination that continued "through 2021" such that their claims are timely. (ECF No. 36 at 3.) Defendants reply that the continuing violation doctrine does not apply to discrete acts of discrimination and a claim based on termination accrues at the time the termination is issued, not the time it takes effect. (ECF No. 34-1 at 9–10; ECF No. 37 at 5–10.)

As explained above, the continuing violation doctrine cannot apply to "discrete discriminatory acts," meaning "that a time-barred discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222 (4th Cir. 2016) (citing *Morgan*, 536 U.S. at 113). Where the alleged discriminatory conduct constitutes "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," *Morgan*, 536 U.S. at 114, therefore, a plaintiff "must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred," *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004). Conversely, where the challenged acts involve repetitive acts within the same challenged employment practice, the claim may be subject to the continuing

violation doctrine. *Morgan*, 536 U.S. at 122. In this case, the termination of Plaintiffs' agency agreements constitutes a discrete act not subject to the continuing violation doctrine, while their allegations of a pattern of discrimination may constitute repetitive acts within the same challenged employment practice. Accordingly, this Court addresses the limitations period for each allegation separately and by Count.

## I.    Count I

As a threshold matter, to the extent Plaintiffs intended to define Erie Defendants to include Erie Insurance New York,[16] any claim against Erie Insurance New York must be dismissed as abandoned or untimely. First, Plaintiffs do not respond to Defendants' arguments that Erie Insurance New York should be dismissed because the Amended Complaint is devoid of substantive allegations against it. *See* (ECF No. 36 (failing to reference Erie Insurance New York or otherwise respond to Defendants' related arguments)). Failure to respond to a defendant's arguments for dismissal constitutes abandonment and results in dismissal of the claim. *See Roberts v. Equian, LLC*, 793 F. Supp. 3d 643, 662 (D. Md. 2025)

---

[16] It appears that Plaintiffs have failed to allege any claims against Erie Insurance New York, which is referenced only in the case caption. *See* (ECF No. 27). As federal courts of appeal, this Court, and other district courts within the Fourth Circuit have repeatedly recognized, failure to allege substantive allegations against a party named in a case caption is grounds to dismiss the claims against that purported defendant. *See, e.g.*, *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed[.]"); *Hunt v. Greenville Cnty. Sheriffs Dep't*, 6:25-cv-12832-JDA-WSB, 2025 WL 3657149, at *6 (D.S.C. Dec. 2, 2025) (dismissing claim against defendant named in caption where plaintiff made no substantive allegations against defendant); *Newkirk v. Cir. Ct. of City of Hampton*, 3:14CV372-HEH, 2014 WL 4072212, at *2 (E.D. Va. Aug. 14, 2014) (dismissing claim where plaintiff "fail[ed] to mention the [defendants] in the body of his Complaint"); *Mpoy v. Montgomery Cnty., Md.*, Civ. No. BAH-23-1927, 2025 WL 2824884, at *8–9 (D. Md. Sep. 25, 2025) (dismissing claims against defendant where "complaint contains no specific allegations about [his] actions"). This rule reflects that plaintiffs must allege "enough factual matter (taken as true) to suggest" a cognizable cause of action, which requires allegations of a defendant's conduct. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678; *see also A Soc'y Without a Name*, 655 F.3d at 346. In this case, Plaintiffs fail to define Erie Insurance New York as a member of the "Erie Entity Defendants" against which they allege Count I, *see* (ECF No. 27 ¶¶ 11, 3–12, at 12), and they do not allege that Erie Insurance New York engaged in any conduct.

(collecting cases); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Kitchings v. Shelton*, Civ. No. PWG-17-882, 2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) (collecting cases).

Second, as explained above, actions under 42 U.S.C. § 1981 are subject to a four-year statute of limitations. *James v. Cir. City Stores, Inc.*, 370 F.3d 417, 421 (4th Cir. 2004). In this case, Plaintiffs named Erie Insurance New York as a defendant for the first time when they filed their Amended Complaint. *Compare* (ECF No. 1 (failing to name Erie Insurance New York as defendant)) *with* (ECF No. 27 (listing Erie Insurance New York in case caption but not in any allegations)). Where a plaintiff newly adds a defendant to an amended complaint, "such amendment amounts to a new and independent cause of action and cannot be permitted when the statute of limitations has run." *Phillip v. Sam Finley, Inc.*, 270 F. Supp. 292, 294 (W.D. Va. 1967) (quoting *Kerner v. Rackmill*, 111 F. Supp. 150, 151 (M.D. Pa. 1953)); *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 366–67 (4th Cir. 2006) (explaining plaintiff may not add new defendant in amended pleading absent showing that it relates back and failure to add defendant was mistake under Federal Rule Civil Procedure 15). Plaintiffs have alleged conduct at the very latest on the date the Termination Letter became effective on August 21, 2020. Plaintiffs first named Erie Insurance New York as Defendant on April 14, 2025, which is beyond the four-year limitations period, and they have made no showing of mistake. Plaintiffs have failed to state a § 1981 claim against Erie Insurance New York, which is DISMISSED as defendant.

### a.   § 1981 claim against Erie Defendants based on termination

The termination of Plaintiffs' agency agreements constitutes a discrete act not subject to the continuing violation doctrine. *Morgan*, 536 U.S. at 114; *see also Sims v. Univ. of Md. Med.*

*Sys. Corp.*, Civ. No. CCB-19-295, 2022 WL 2275891 (D. Md. June 23, 2022) ("A 'discrete act' includes 'termination, failure to promote, denial of transfer, or refusal to hire." (emphasis omitted) (quoting *Morgan*, 536 U.S. at 114)); *Whitaker v. Ciena Corp.*, Civ. No. RDB-18-0044, 2018 WL 3608777, at *4 (D. Md. July 27, 2018) ("In *Morgan*, the United States Supreme Court specifically identified 'termination, failure to promote, denial of transfer, [and] refusal to hire' as discrete acts . . . ." (quoting *Morgan*, 536 U.S. at 114)).  Accordingly, to the extent that Plaintiffs' § 1981 claim against Erie Defendants in Count I is premised upon the termination of their agency agreements, it is timely only if it was filed within four years of its accrual.  *See Williams*, 370 F.3d at 429 (quoting *Morgan*, 536 U.S. at 113).  The Supreme Court has repeatedly determined that "a[] . . . wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment."  *Green v. Brennan*, 578 U.S. 547, 564 (2016) (first citing *Ricks*, 449 U.S. at 258–59; and then citing *Chardon*, 454 U.S. at 8).

As to a § 1981 claim based on termination, therefore, "the filing period runs from the time at which [plaintiffs were] informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition."  *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982); *see also Kulshrestha v. Shady Grove Reprod. Science Ctr., P.C.*, 668 F. Supp. 3d 411, 417 (E.D. Va. 2023) ("Supreme Court and Fourth Circuit precedent makes clear that 'a discriminatory discharge claim accrues when the employee receives notice of the termination, not on the last day of employment.'" (quoting *Smith*, 770 F. App'x at 50–51)).  In this case, Plaintiffs allege that they were informed of the allegedly discriminatory termination of their agency agreements on May 14, 2020, when Defendants issued the Termination Letter.

Accordingly, their § 1981 claim premised on alleged discriminatory termination accrued on May 14, 2020, even though the termination did not take effect until August 21, 2020. *See Price*, 694 F.2d at 965; *Smith*, 770 F. App'x at 50–51; *Green*, 578 U.S. at 564. Under the four-year limitations period applicable to § 1981 claims, therefore, Plaintiffs had to file their claim based on wrongful termination on or before May 14, 2024. They did not file this action until August 20, 2024. Accordingly, to the extent their § 1981 claim in Count I rests on termination of their agency agreements, it is time-barred.

### b. § 1981 claim based on policy or pattern of discrimination

Plaintiffs' § 1981 claim in Count I is also time-barred to the extent it rests upon an alleged pattern of discrimination. As an initial matter, the Fourth Circuit has suggested that the continuing violation doctrine does not apply to claims based on a "pattern or practice" of discrimination. *Williams*, 370 F.3d at 429 ("Although the Court in *Morgan* left open the question whether the continuing violation doctrine applies to 'pattern or practice' claims, other courts have declined to extend the limitations period for discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination." (internal citations omitted)); *accord Maisha v. Univ. of North Carolina*, 641 F. App'x 246, 249 (4th Cir. 2016) (unpublished) ("General allegations of 'a pattern or practice of discrimination' are insufficient to establish a continuing violation." (quoting *Williams*, 370 F.3d at 429–30)). Even if the continuing violation doctrine could apply to Plaintiffs' claims of a policy of discrimination in this case, however, their claim remains untimely because they fail to allege any wrongful act within the applicable limitations period. *See Hill*, 731 F.2d at 180.

Under the continuing violation doctrine, a claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and *at least one act falls within the time period*." *Morgan*, 536 U.S. at 122 (emphasis added). Crucially, this doctrine applies only where one or more of the alleged wrongful acts occurred within the limitations period. *See Thompson*, 117 F. Supp. 2d at 526 (collecting cases); *Jersey Heights Neighborhood Ass'n v*, 174 F.3d at 189; *Hill*, 731 F.2d at 180 (quoting *Woodard*, 717 F.2d at 915). For Plaintiffs' § 1981 claim to be timely under the continuing violation doctrine, therefore, they must allege that at least one wrongful act occurred on or after August 20, 2020, the date four years before they filed their claim. The latest commission reduction that Plaintiffs allege occurred in 2016, (ECF No. 27 ¶ 20), eight years before Plaintiffs initiated this action.[17] Therefore, the allegations related to reduced commissions cannot render Plaintiffs' claim of a pattern of discrimination timely under the continuing violation doctrine.[18]

Nor can the August 21, 2020, effective date of the termination of Plaintiffs' agency agreements render their claim of a pattern of discrimination timely under the continuing violation doctrine. Although termination is a discrete act such that the continuing violation doctrine does not apply to wrongful termination claims, a termination itself can constitute an act within the requisite limitations period for the purposes of applying the continuing violation

---

[17] Plaintiffs also allege that "between 2003 and 2021, Erie reduced Ross's commissions arbitrarily," (ECF No. 27 ¶ 16), but they allege that their relationship with Erie Defendants terminated in 2020 (ECF No. 27 ¶ 20). Additionally, they allege no facts regarding any interaction with Defendants in 2021. Accordingly, based on Plaintiffs' allegations, they were not authorized to sell Erie insurance in 2021 and, therefore, their commissions could not have been reduced in 2021.

[18] Separately, to the extent Plaintiffs sought to allege a claim based on discrete acts of commission reductions, that claim would have accrued at the latest in 2016—the date of the latest alleged commission reduction—and the statute of limitations would have run in 2020. Accordingly, any claim based on a discrete act of commission reductions is time-barred.

doctrine to a broader claim of hostile work environment.  *See, e.g.*, *Guessous*, 828 F.3d at 223 (determining that "non-time-barred discrete acts can be considered part of the 'series of separate acts that collectively' create a hostile work environment, thus rendering a hostile-environment claim timely under the continuing-violation doctrine").  Termination may form such an anchor act, however, only where the termination itself is timely within the limitations period.  *See id.*; *U.S. EEOC v. Phase 2 Invs., Inc.*, 310 F. Supp. 3d 550, 575 (D. Md. 2018) ("A 'discrete act,' however, can still comprise part of a hostile work environment claim, *so long as it falls within the filing period*." (emphasis added)).

As explained above, Plaintiffs' termination does not fall within the limitations period. For the purposes of limitations, Plaintiffs' termination occurred when they received the Termination Letter on May 14, 2020, *not* when their termination became effective on August 21, 2020.   For the same reason, Plaintiffs' allegation of ongoing harm based on Erie Defendants' failure to reinstate their agency agreements after the MIA's decision in 2024 cannot form an anchor event for the purposes of the continuing violation doctrine.[19]  In sum, Plaintiffs allege wrongful conduct that culminated in their receipt of a termination notice on May 14, 2020, which constitutes the latest possible date on which any § 1981 claim accrued. The four-year statute of limitations applicable to their § 1981 claims thus began at the latest on May 14, 2020, and terminated on May 14, 2024, more than three months before they

---

[19]  Moreover, it is not clear to this Court that Defendants are required to reinstate the contract under Maryland law because the MIA's determination remains subject to an ongoing appeal.

initiated this action on August 20, 2024. Plaintiffs' § 1981 claim against Erie Defendants is

time-barred, and Defendants' Motion is GRANTED as to Count I, which is DISMISSED.[20]

## II.    Count II: § 1981 claim against Mr. Marrion

For the same reasons, the § 1981 claim against Mr. Marrion in Count II is untimely.

As a threshold matter, "'to make out a claim for individual liability under § 1981, a plaintiff

---

[20] Even if Plaintiffs' § 1981 claim in Count I were not time-barred, it is not clear that they have alleged facts
sufficient to state a claim for relief. As amended, Section 1981 "prohibit[s] race discrimination post-contract
formation, including in the termination of contracts." *Chambers v. North Carolina Dep't of Just.*, 66 F.4th 139, 141
(4th Cir. 2023) (footnote omitted) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004)). "To
succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate
on the basis of race, and that the discrimination interfered with a contractual interest.'" *Nadendla v. WakeMed*,
24 F.4th 299, 305 (4th Cir. 2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)).
A § 1981 "plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the
loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Generally, a contract between an insurance agent and an insurance company may form the basis for a § 1981
claim. *See, e.g., Wortham v. Am. Fam. Ins. Grp.*, 385 F.3d 1139, 1141 (8th Cir. 2004) (explaining § 1981 claim
required insurance agent to allege insurance company "intended to discriminate against her on the basis of
race"); *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205 (10th Cir. 2022) (reversing summary judgment where agent
brought § 1981 claim against insurance company with which agent had contracted to sell policies). Importantly,
however, in *Mackey v. Nationwide Insurance Companies*, 724 F.2d 419 (4th Cir. 1984), the Fourth Circuit determined
that, for prudential reasons, an insurance agent generally lacks standing to allege § 1981 claims based on a
company's purported redlining practices. *See id.* at 421–22 ("The district court was correct in concluding that
the plaintiff [an insurance agent] had no standing to attack Nationwide's alleged redlining practice under the
Civil Rights Act, 42 U.S.C. § 1981 and § 1982."). Specifically, the Fourth Circuit concluded that "[t]he persons
best suited to challenge the redlining practices are those owners of homes and buildings who have been the
direct victims of the alleged discriminatory practice." *Id.* at 422. Indeed, the Fourth Circuit rejected the
plaintiff's argument for standing on the basis that "he was 'punished' for trying to vindicate the §§ 1981 and
1982 rights of the home and building owners . . . ." *Id.* In short, the Fourth Circuit concluded that aggrieved
potential insureds could raise their own claims, and "[d]enying standing to [the insurance-agent plaintiff] does
not insulate Nationwide from legal accountability for any deprivation of § 1981 and § 1982 rights it may have
committed." *Id.*; *see also Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268,
1279–1280 (D.C. Cir. 1994) (evincing agreement with *Mackey* as to § 1981).

Many of Plaintiffs' allegations appear to rest on a redlining theory nearly identical to that the Fourth Circuit
rejected in *Mackey*. They compare their treatment to that of agents serving "majority-white" communities. *See*
(ECF No. 27 ¶¶ 16, 17, 21, 23, 24, 26, 38.) Indeed, some of their allegations relate solely to purported redlining.
*See, e.g., (id.* ¶ 41 ("Erie's policies disparately caused a 23% decline in policies in majority-Black ZIP codes versus
a 14% increase in majority-white areas."). To the extent Plaintiffs allege that Erie Defendants "interfered with
[their] ability to enter contracts with prospective insureds in the greater Baltimore area" by imposing different
requirements on agents serving "majority-minority" areas, they appear to allege redlining that cannot support a
§ 1981 claim. *See Mackey*, 724 F.2d at 421. Rather, any § 1981 claim must arise from Plaintiffs' much more
limited allegations of racial discrimination in their contractual relationship with Erie Defendants, but such
claims are time-barred.

must demonstrate some affirmative link to causally connect the actor with the discriminatory action,' and the claim 'must be predicated on the actor's personal involvement.'" *Hawthorne v. Virginia State Univ.*, 568 F. App'x 203, 204–205 (4th Cir. 2014) (mem.) (unpublished) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)); *accord Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 632 (D. Md. 2017). "In other words, the Fourth Circuit recognizes liability for individual supervisors only when 'they intentionally cause an employer to infringe the rights secured by section 1981.'" *Harriston v. Target Corp.*, Civ. No. GLR-23-2795, 2024 WL 4336093, at *5 (D. Md. Sep. 25, 2024) (quoting *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004)); *see also Tillman v. Wheaton-Haven Recreation Ass'n*, 517 F.2d 1141, 1145 (4th Cir. 1975). "Thus, supervisors may be individually liable under Section 1981 when they 'authorize, direct, or participate in' a discriminatory act." *Tibbs v. Balt. City Police Dep't*, Civ. No. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012) (quoting *Atkins v. Winchester Homes*, Civ. No. CCB-06-278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007)).

In this case, the latest alleged discriminatory act in which Mr. Marrion allegedly participated was the issuance of the Termination Letter on May 14, 2020. Thus, as explained above, under the four-year limitations period applicable to § 1981 claims, Plaintiffs had to file their claim against Mr. Marrion no later than May 14, 2024, but they initiated this action only on August 20, 2024. Even assuming the continuing violation doctrine could apply to Plaintiffs' claim that Mr. Marrion engaged in a pattern of discriminatory supervision, for the same reasons discussed above, the August 21, 2024, effective date of the Termination Letter cannot serve as an anchor event to render that claim timely. That is, for limitations purposes, a termination occurs on the date the plaintiff becomes aware of the termination, *not* the date it

takes effect. *See, e.g., Phase 2 Invs., Inc.*, 310 F. Supp. 3d at 575 (requiring anchor event for continuing violation doctrine to occur within requisite limitations period); *Price*, 694 F.2d at 965 (recognizing limitations period begins when plaintiff learns of discriminatory decision). Defendants' Motion is GRANTED as to Count II, which must be DISMISSED as untimely.[21]

### III.    Dismissal with Prejudice

As this Court explained in its prior Memorandum Opinion, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Federal Rule of Civil Procedure 15(a). "Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice." *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). Additionally, courts should dismiss claims without leave to amend where amendment would be futile. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015). "Where the statute of limitations bars a cause of action, amendment may be

---

[21] Alternatively, Count II is also subject to dismissal because Plaintiffs have failed to allege facts sufficient to state a claim of individual liability against Mr. Marrion. Specifically, Plaintiffs have not sufficiently alleged that Mr. Marrion "intentionally and personally participated in" the discriminatory acts alleged. *Brown v. Balt. Police Dep't*, Civ. No. RDB-11-0136, 2011 WL 6415366, at *8 (D. Md. Dec. 21, 2011). Although Plaintiffs allege that Mr. Marrion "continued a pattern of discriminatory supervision and discipline against Ross;" issued Plaintiffs a "warning letter citing pretextual performance issues;" and issued the 2020 Termination Letter, they fail to allege that he *caused* any discrimination. As this Court has recognized, individual liability under § 1981 applies only "where the act or omission resulting in the infringement of rights was intentionally caused by the supervisor . . . ," *Sellito v. Metropark USA, Inc.*, Civ. No. RDB-11-0814, 2012 WL 1405949, at *7 (D. Md. Apr. 20, 2012), and "the claim must be predicated on the actor's personal involvement," *Alvarez-Soto*, 258 F. Supp. 3d at 632 (quoting *Hawthorne*, 568 F. App'x at 204–05). The Amended Complaint is devoid of allegations that Mr. Marrion intentionally caused Erie Defendants to implement the alleged discriminatory policies, reduce Plaintiffs' commissions, or terminate Plaintiffs. Although Plaintiffs allege that Mr. Marrion engaged in each of these alleged discriminatory acts by acting as Plaintiffs' supervisor, their claims are not predicated on his personal involvement. *See, e.g., Harriston*, 2024 WL 4336093, at *5 (quoting *Lay*, 326 F. Supp. 2d at 688); *Alvarez-Soto*, 258 F. Supp. 3d at 632. Rather, Plaintiffs implicitly acknowledge that the alleged discrimination occurred without Mr. Marrion's personal involvement because they allege that he continued his predecessor's discrimination. Accordingly, Plaintiffs fail to state a claim of individual liability under § 1981 against Mr. Marrion.

futile and therefore can be denied." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (collecting cases). As explained above, Plaintiffs' claims are untimely. Plaintiffs have already amended their § 1981 claims with leave of this Court, and they have not requested leave to amend again.[22] Accordingly, dismissal of both claims shall be WITH PREJUDICE.[23]

## CONCLUSION

For the reasons expounded above, Defendants' Motion to Dismiss (ECF No. 34) is GRANTED and Plaintiffs' Amended Complaint (ECF No. 27) is DISMISSED WITH PREJUDICE.

A separate Order follows.

/s/ _____
Richard D. Bennett
United States Senior District Judge

Dated: February 9th, 2026

---

[22] Moreover, this is the second action—after *Ross I*—in which Plaintiffs have raised their § 1981 claims, and Defendants argued in their motion to dismiss Plaintiffs' original complaint that the § 1981 claims were untimely. Thus, Plaintiffs had notice of arguments related to untimeliness when they drafted their Amended Complaint.
[23] Because Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6), the Court does not reach Defendants' alternative arguments for application of the abstention doctrines elucidated in *Younger v. Harris*, 401 U.S. 37 (1971) and *Burford v. Sun Oil Co.* 319 U.S. 315 (1943). Nevertheless, the Court deems it prudent to note that Plaintiffs are not parties to the pending MIA appeal that undergirds Defendants' arguments for abstention. Thus, Plaintiffs would not be able to raise their § 1981 claims in the state proceeding in the manner required for abstention to apply under *Younger*. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (explaining *Younger* abstention is appropriate only if party seeking federal relief would have adequate opportunity to raise federal claim in state proceeding). Similarly, "*Burford* allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726–27 (1996) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)). Although Maryland has a substantial interest in regulating its insurance industry, Plaintiffs' § 1981 claims in this case are particular to her contractual relationship with Erie Defendants.